May it please the Court, about exactly two weeks ago was a year from when Gregory Phillips had been incarcerated for this revocation sentence. Now that year was the top end of the guidelines range for his revocation sentence. He's got another year to go twice the top end because the judge gave two reasons for his revocation sentence. The first one appears in Title 18 of the U.S. Code. The second doesn't appear anywhere. Because the judge imposed this sentence, there was double the guideline range based on a factor that doesn't appear in the statute, that was a legal error for the Court to do that. Well that's not an exclusive list of factors. It doesn't exclude all other factors. It doesn't preclude the judge from considering the totality of the circumstances. Sentencing is holistic. I grant your premise that sentencing is holistic, but these factors are exclusive. How do you figure that? Look at the language of the statute. The Court may after considering the factors set forth in Section 3553 A1 etc. do the I don't see any prohibition there at all. Well it says may do any of the following actions after it considers all those factors. And you're not suggesting the judge failed to consider A1, A2B, A2C, A2D, A4, A5, A6 or A7, are you? Are you saying she failed to consider one of those? What our argument is is that there's no difference. Are you saying she failed to consider any of those items? Which? And I'll tell you, by considering factors that don't appear there, that's functionally the same thing as not properly considering the facts that are there, or factors that are there. Okay, so what did she fail to consider? We've got a statute 3661 that says no limit shall be placed on the information concerning background, character, and conduct of a person convicted of an offense. We've got a wide open, you can consider anything you want to, basically it's not unconstitutional, right? That's correct. So, and we've got a statute that says, I read it as saying you must consider the following factors but not as exclusive. And that's where we disagree. Okay, so how do you get, how do you get exclusive out of this language? Just as an example, if I brought up vengeance, as I brought up in briefing, or if I brought up the expiation of sin, those are factors that one could see to try to come out of a sentence, but just because I considered or brought those factors to bear in a case, doesn't mean that they, that the sentence would be a lawful one. And so when you're giving proper weight to the factors that Congress has put forward. Again, don't see how that follows. That because the judge considered the need to hold the defendant accountable, she didn't consider the other factors when the record reflects that she did. Well, she considered one other factor, which is what the record says. And as to the accountability factor, all sentences hold people accountable. That's what sentences do. So it doesn't, it doesn't help. Right, so how can that be an improper factor? It would be a very strange thing for Congress to say that judges can't hold defendants accountable. That's correct, Your Honor. And the point, though, is that holding somebody accountable, it doesn't distinguish why it should be twice as high as the high end. Well, that's a separate argument. You know, whether she adequately justified the sentence is a separate argument. But this whole focus on whether the judge is consider the need to hold a defendant accountable for crashing and burning unsupervised release, I mean, to suggest that that's an improper factor is to attribute to Congress something that is just not in the face of the statute. Respectfully. And makes no sense, frankly. Respectfully, Your Honor. If Congress wanted to add that kind of factor, or they're broad enough, the factors on their own. And if Congress wanted to use add a factor that would distinguish, help courts think about where should I sentence this person within the guideline range or above the guideline range. They've given seven factors with some that are broken out into subsets. Those are pretty broad. And that's the, those are the legal tools that Congress has passed or demanded that judges use. Well, you can continue on with Arch. Mr. Jarosz can respond to both. Sean Arch did not get off to a good start on initially. His counsel asked for time served after he was taken into custody. Instead, the judge went for 12 months, not a year and a day, so he couldn't get credit for good time. For grade C violations. And the judge did so based again on this accountability factor. And I guess to readdress the point made by the panel, the accountability factor is not, it's one that happens in every case. And so it can't be used to distinguish or be helpful for this court in sentence was a just one. What would you consider a proper sentence? For Mr. Arch, we believe the proper sentence would be time served and then more supervised release. In his case, because he had had some challenges with... By time served, you mean his regular prison sentence? No, he was in custody for approximately four weeks. Oh, I see. Between when he was taken into custody and then by the time we had gotten to the final hearing. And in Phillips, what would you consider an appropriate sentence? We asked for the low end of the guideline range because there was, I wouldn't call it crashing and burning, I know all of you judges have seen worse behavior on supervised release, but we thought something at the low end of the guideline range for his grade C violations would have been appropriate and sent the same message. Instead, he got two years. Is there, the thing I struggle with here, Mr. Moyers, is that I don't know of any aspect of federal sentencing that is more discretionary than dealing with a defendant. And the reason you, the district courts, have that discretion is appellate courts can have confidence that they haven't gone well outside their powers because they have to make a decision based on these broad categories or within this land that those categories fence in. The discretion and the deference that you might give to it or that an appellate court might give to it are less, that's a less compelling case when you're going, when a judge goes beyond the factors. Well, is accountability, you've told us both that it's prohibited and that it's part of every sentence. Yes, it's a prohibited factor in the, to the extent a judge is using it to distinguish a sentence about why it fits within the guidelines or above the guidelines or below the guidelines. Congress has not asked them to think about it in that. I don't, I think what you mean is it's uninformative. Yes, that's also true to the extent that if it's true in every case, it doesn't give you, the appellate court, any way of knowing, I guess, any confidence that the judge thought about it in the way that Congress has asked the judge to do. And so. I mean, I suppose anyone who deliberately violates supervised release is accountable. It's responsible. Is that your concern? It just doesn't mean anything? It doesn't. Well, it's not just that it doesn't mean anything, is that what it also does is obscure, because if it is present in every case, it can't be the factor that moves the judge, because all sentences are supposed to hold a defendant accountable. That's what the concern is, that not only is it not informative, but it obscures from, well, what's really going on? Is the judge properly considering the factors? Well, the judge doesn't have to impose re-imprisonment, right? No. It may, as the panel pointed out, it's a may standard for after finding that there are violations and looking at these factors, the judge has a variety of options in the toolkit. Right. So the judge's reference to the need to hold the defendant accountable is an explanation for why more prison time is being imposed. At least a partial explanation, along with other things. Well, there's a difference between, the judge has to give reasons for the particular tool that the judge might use in the case, in order for the judgment to be susceptible to any kind of appellate review. Because without reasons, on the record, it's not very helpful to panels such as yourselves, for making this decision. But it's also virtually impossible for us to exercise that discretion, so. Okay, thank you, Mr. Moyers. Mr. Yarosh? Peter Yarosh for the United States. Your Honor, if the court accepts the defendant's argument, what we would have is a sentencing in which the court issues an order in writing, hands it to the defendant, and then that's the end of it. No, no, no. What he's saying, which seems to make perfectly good sense, is that any time you're given any kind of punishment for violating terms of supervised release, you're being held accountable, right? And the term accountability doesn't tell you how severe the punishment should be. If you have to give a reason why going above the guidelines range, or this or that or the other. And if I could just parse that out just a little bit. What the court does, and what the court did in both of the sentencing here, was have a discussion with the defendant present. In which case, either the prosecution or the defense, and through the reports and understanding, there's a discussion about the types of violations that occur here. It's not done in a vacuum. They're not using just magic words. But the concept of saying, gee... But the term accountability does not tell you what the for violating supervised release, right? You're accountable. So how does the word accountability justify a longer or a shorter sentence? And if that was all the court said, then the argument would hold water. But that's not all that occurred. What was the worst thing that Phillips did? The worst thing he did was the grade B violation, which was the possession of controlled substances. Which, contrary to what the defense says, actually had an 18 month... So that's the cocaine? Cocaine and I think marijuana. And what it was... A big deal, marijuana. Well, Your Honor, it's an 18 month violation. The court gave him 6 months above the high end of that amount. And also the opiates and the heroin. Cocaine, heroin, or whatever the opiates were from the testing. So the point is, is that there was a 6 month increase from that high end. He doesn't work though. Doesn't he work? I'm sorry, Your Honor. He works, doesn't he? Mr. Phillips? He's a drug user, but he works, right? He's able to work, right? Your Honor, this was not... So what's so terrible about this? Well, Mr. Phillips, this wasn't his first rodeo. It was a series of past characteristics and actions that led him to now getting sanctioned for this breach of trust. No, I understand. It's hard for these drug addicts to shake off their addiction. If, despite the addiction, you know, if it's like Sherlock Holmes or something, if despite the addiction they function, you know, they work and they don't commit other crimes, why is it such a grave violation? Does he think he's going to be broken of his drug habits by being sent back to jail time and time again? Well, it's a sanction for the violation of the breach after supervised release. Was revocation mandatory here? Revocation was mandatory, yes, because of the grade B violation. Imprisonment was a mandate. Congress has provided that, wisely or not. Right, I believe so. So the answer is really one of what is wrong and what's so hard about having an honest conversation with the defendant, whether it's Ms. Arch or whether it's Mr. Phillips or Mr. Arch, excuse me, or Mr. Phillips, about what is going on through the discussion of the counsel and with him present. Well, did the judge say that she thought that this particular sentence she was meeting out to Phillips would lead to a change in his behavior? I don't think she said that. She, in fact, told him that she was... I'm asking you, did she think that by doing this he'll finally be able to break his drug habits? I could not say, Your Honor. Well, wouldn't that be the rationale for such punishment? It could be. Suppose she thought, look, this guy, he's always going to be a drug addict, but he works, he has family, so it's not going to do any good to be sticking him back in jail, right? She could have said that. But I think what she said was she wants to protect the community. We have a right as citizens... How is he harming the community? Through his drug dealing and his activities. Pardon? Through his drug dealing and activities, consistent with drug dealing. I thought he was a consumer of drugs. He is a consumer of drugs. Part of the market is the consumption. The consumption of drugs hurting... I mean, is he driving recklessly or something? How is his drug addiction hurting the community? Drug addiction affects it because that is the consumer market for the sellers. If there is no consumer, then there's no market. You think that this guy, by being a drug addict, is somehow supporting the market for cocaine? Is that your idea? He's one factor in supporting the market. That is correct, Your Honor. He's one tiny factor, like 1 in 10 million or something, right? Absolutely, and we hold people accountable. We don't hold groups accountable. Now we're back to accountability. Right. But you can have accountability with a light sentence or a long sentence. So you'd think the long sentences for violation of supervised release would be for people who are dangerous rather than people who are self-destructive but who manage somehow to function. We're not on the initial sentence, Your Honor. I think the key here is that we're at the point where he's breached the trust given to him by the court and by society and that we're now addressing that breach of trust. What's the worst thing that Arch did? Arch continued to violate it immediately after. He couldn't stay on it. The worst thing he did is he went down to Illinois, beat up his two sisters, and was arrested while drunk, and then he was arrested. He couldn't even begin. Was he assaulting the sisters? Yes. What did he do? I don't understand. He assaulted the two sisters while in Illinois. He did what? He assaulted his two sisters in Illinois. So he fled Wisconsin, beat up the sisters, was arrested, and then— Okay, so he's violent in a way that Phillips isn't. That's correct, Your Honor. But I think that the idea of holding people that have been placed on revocation, or rather, excuse me, on supervised release, is a legitimate purpose of sentencing for that and to say as a society, we're going to protect the public from these people. What were the two sentences, Phillips? Mr. Phillips got, I believe, 18 or 24 months, which was six months above the grade B violation. Right, and Arch got? Arch, I can't recall right now. Arch was given, I think, 12 months. How long did Arch get? Why did Arch get less when he's violent and Phillips isn't? I have no explanation for that, Your Honor. Well, wait a second. You don't have any explanation. Is that rational, that distinction between— Well, no, each individual is definitely different. Your Honor, it's not. Well, I don't understand. One of them is worse and he gets half the sentence, so I don't get it. Well, the district court evaluated it. Well, I know, but give me a reason why the violent person gets half the sentence as the druggie. I don't believe—I think that the violations for Arch were grade C violations. I don't think there was. They couldn't give Arch more. Well, I don't understand. It was an Arch sentence. His original sentence was much lower. It was a less serious offense. Right. And that has a pretty dramatic effect on the available supervised release, right? Right. It was a 27-month original sentence. And that was below guidelines. He'd gotten a break then, right? Yes. Okay. Well, was 12 months the maximum? No, I don't believe so. So I'm left puzzled why the violent violator should get half the sentence as the peaceful one. And, Your Honor— Did the judge say anything about that? I don't think the judge— You may wonder why I'm giving Arch only half the sentence. Well, I do think that the situations in the backgrounds and history of these defendants are different and that they're not punishing them for the crime that they are committing. They're punishing them for—or sanctioning them for the breach of the trust, and they— Now you've lost me totally. If Clay is correct, which Mr. Moyers cites in the brief— Arch beating up his sisters was less of a breach of trust than Phillips snorting cocaine? Is that what you're saying? No, Your Honor. I'm saying that in the circumstances they can behave differently. What are the circumstances that entitle Arch to the lighter sentence? Because of his background and perhaps his mental issues that exist out there. He had mental issues that weren't reflective in Phillips so that it may not be appropriate to give him the same sort of weight of cognitive ability that Mr. Phillips had. And that could be the factor that weighs on the court. But all these things were discussed during the sentencing, and appropriately so. And I don't think that the court should be hamstrung. Government would request simply that the court affirm the district rule. If I could just ask to follow up. These two cases were sentenced—the revocation hearings were about seven months apart. Yes. Is that right?  That's all, Your Honor. So there would have been no reason for the district court to link the two in comparing them? That's correct. Thanks. And what was Mr. Phillips' original sentence? I believe his original sentence was as a career offender, and then it was reduced down to, I think, 137 months after— Compared to the 27-month sentence for Arch. Right, exactly. And is there a difference in their criminal records? Yes, there was. I assume. Yes. One is more aggravated than the other? Right, exactly. Exactly. And I take it Mr. Phillips' was more aggravated than Mr. Arch's? That's correct, Your Honor. That's correct. All right. We're good. Okay. Well, thank you very much. And Mr. Moyers, do you have anything? I guess I want to begin by clearing up some confusion. As to Mr. Phillips, on page 15 of the appendix, that is the transcript, and in that the district court judge says, these are grade C violations, but because I find a grade B violation happened, the guideline range is 12 to 18 months. Then in her order that followed, the written order, which you can look at on page 20, she only cites the grade C violations, which would make the guideline range, the top end, 12 months. So there's a little ambiguity there about what the, I guess, what her view of what the guidelines range was and what violations had actually happened. And does that affect also whether prison is optional or mandatory? I believe if there are grade B violations, or not grade B violations, but because if the judge finds that Mr. Phillips possessed drugs, there's a statutory directive that says there has to be revocations mandatory. But that didn't happen here, or that did happen here, in terms of the findings? It's difficult to say because for anybody in the courtroom that heard it, they would have heard they're grade C but also grade B, so the guideline revocation is mandatory. The guideline range is 12 to 18. Anybody who just went and got the order off the docket that came, I think, the next day, would say, no, just grade C violations, and that makes the range 6 to 12. And for Arch, we have just grade C. It was 8 to 14, I believe, and they were all grade C. And Mr. Arch. Did you say 8 to 14? Yes. I'm nearly positive. And. Well, wait a second. You're in the middle of a sentence. We're not that strict. So what I would point out to your honors to leave you with is that this accountability factor figured in both sentences, and whether they got within guideline sentence or above. And you want a ruling from this court saying the judge can never take this factor into consideration. Your fallback position is that it shouldn't have been in this case, but that's what you're asking for. Yes. Our position is that Congress did a very good job, and those factors are the ones that govern. So let me ask you, did the judge discuss any of the 3553A factors? In both cases, she discussed two. The common one, and there were the same two in both cases. One was the protection of the community, protection of the public, which is an enumerated factor, and the other one was the accountability factor. Well, that's not actually in 3553A. I've used it as a shorthand because it appears it's the same language in both orders. But it's not in 3553A? No, it's not in 3553A or 3583E where they're incorporated for purposes of supervised release. Okay. Well, thank you very much. And you were appointed, were you not? I am a federal defender. You're a federal defender. Well, we thank the defenders and you in particular for your efforts on behalf of your clients. And, of course, we thank you.